NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

EVELYN ORRIOLS, :
:
                 Plaintiff, :
:
                 v. :
:   Civil Action No.  04-5825 (JAG)
COMMISSIONER OF SOCIAL SECURITY :
:   **OPINION**
:
               Defendant. :
:
:

**GREENAWAY, JR., U.S.D.J.**

## INTRODUCTION

Plaintiff Evelyn Orriols seeks review of the Commissioner of Social Security's ("Commissioner's") decision denying her application for Supplemental Security Income Benefits ("SSI"), pursuant to 42 U.S.C. § 405(g).[1] Plaintiff asserts that the Commissioner's decision does not meet Third Circuit procedural requirements and is not based on substantial evidence. Consequently, Plaintiff asks this Court to reverse the decision of the Commissioner or, in the alternative, to remand this claim to the Commissioner for reconsideration. For the reasons set forth in this opinion, this Court finds that the Commissioner's decision is supported by substantial evidence and should be affirmed.

---

[1] This section of the Social Security Act ("Act") provides that any individual who was a party to a hearing before the Commissioner may commence a civil action within sixty days after the Commissioner's final determination. The appropriate forum for this action is the district court of the United States judicial district in which the plaintiff resides, or has his principal place of business. 42 U.S.C. § 405(g).

## PRIOR PROCEEDINGS

On September 23, 2003, Plaintiff filed an application for SSI benefits, alleging disability as of October 15, 2001, due to stomach pain, liver ailment, and depression. (Tr. 115, 119-20, 38.)[2] Upon review of the evidence, the Social Security Administration determined that Plaintiff did not qualify for SSI benefits either initially (Tr. 87-91) or on reconsideration. (Tr. 93-96.) Plaintiff then requested a hearing before an Administrative Law Judge to review the application. (Tr. 97.) Based on a hearing held on January 8, 2004, Administrative Law Judge Dennis O'Leary ("ALJ") issued his decision on April 23, 2004. (Tr. 13-23.) Below is a summary of his findings:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of her disability.

2. The claimant's liver disease and depression are considered "severe" based on the requirements in Regulation 20 C.F.R. § 416.920(b).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix I, Subpart P, Regulation No. 4.

4. The Administrative Law Judge finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5. The claimant has the following residual functional capacity ("RFC"): "light work."

6. The claimant's past relevant work as a receptionist did not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R. § 416.965).

7. The claimant's medically determinable liver disease and depression do not prevent the claimant from performing her past relevant work.

---

[2] "Tr." refers to the case transcript. The Act instructs the Commissioner to file, as part of her answer, a certified copy of the transcript of the record, including the evidence upon which the findings and decision complained of are based.   42 U.S.C. § 405(g).

      8.      The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. § 416.920(e)).

(Tr. 23.)

Based on these findings, the ALJ concluded that Plaintiff was not eligible for SSI payments under §§ 1602 and 1614(a)(3)(A) of the Social Security Act. (Tr. 23.) The Social Security Administration Appeals Council found no basis to review the ALJ's decision, thereby deeming the ALJ's decision the final decision of the Commissioner. (Tr. 6.) Plaintiff subsequently filed this action, seeking review of the Commissioner's final decision, pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE FACTS

### A. Background

Plaintiff Evelyn Orriols, born on January 23, 1965, was thirty-six years of age at the onset of her alleged disability. (Tr. 29.) She currently lives in an apartment with her three children, ages sixteen, fourteen, and thirteen. (Tr. 41.) Plaintiff completed ninth grade in high school and held several jobs prior to the onset of her alleged disability. (Tr. 29-33.) From 1998 to 1999, Plaintiff worked as a receptionist in a car dealership where she handled filing, phone calls, and customer inquiries. (Tr. 33.) She testified that she spent most of her day standing and was occasionally required to carry boxes, weighing at most thirty pounds, to the parts department. (Tr. 33.) From 1999 to 2001, Plaintiff worked as a part-time bus aide where she assisted in transporting handicapped children to and from school. (Tr. 32.) Plaintiff testified that she helped the children in wheelchairs by "lift[ing] them and so forth, at least mov[ing] on and off the bus . . . ." (Tr. 32-33.) Lastly, for six months during 2001, Plaintiff worked part-time (four or five hours a day) as a receptionist in a dental office where she answered phones, handled filing,

3

cleaned instruments, and stored new supplies. (Tr. 30-32.) Plaintiff estimated that the supply boxes weighed at most five to ten pounds and that she spent the majority of the day standing. (Tr. 31.)

In the spring of 2002, Plaintiff sought medical treatment after experiencing severe stomach pains and diarrhea three to four times daily, nausea, and fatigue. (Tr. 33-35.) The Plaintiff testified that her stomach pains were severe enough to interfere with her ability to function, that the pains worsened when she was more active, and that her most comfortable position was lying or sitting down. (Tr. 35.) She testified that she was unable to make a bed, walk more than one to two blocks, or stand for longer than ten to fifteen minutes without experiencing fatigue. (Tr. 43-44.) Plaintiff sought treatment with her primary care physician, Dr. Sarwat Takla, who referred her to several other doctors, and a psychiatrist, Dr. Hasaj. (Tr. 36-37.)

**B. Medical Evidence**

The record indicates that the Plaintiff was evaluated by physicians on several occasions.

1. Examinations with or authorized by Dr. Takla

Dr. Sarwat Takla has been Plaintiff's primary care physician since December 13, 2001. (Tr. 174.) Dr. Takla's first report on record regarding Plaintiff, dated December 26, 2002, indicated that blood work following Plaintiff's December 2001 visit came back with a bilirubin[3] level of 2.0, with the rest of the liver function test normal. (Tr. 175.) "The impression was that

---

[3] Bilirubin: "the orange-yellow pigment of bile, formed principally by the breakdown of hemoglobin in red blood cells after termination of their normal lifespan. . . . Testing for bilirubin in the blood provides information for diagnosis and evaluation of liver disease, biliary obstruction, and hemolytic anemia." Mosby's Medical, Nursing, & Allied Health Dictionary 191 (5th ed. 1998) [hereinafter "Mosby's"].

4

the patient had abnormal liver function test.  Etiology to be determined. . . . Total bilirubin level was persistently elevated.  There was a repeated blood test, with some fluctuation."  (Tr. 175.)

Dr. Takla considered the following doctor and hospital visits before forming an impression of the Plaintiff's medical status.  On March 15, 2002, Plaintiff had an ultrasound of the abdomen.  (Tr. 175.)  Greenville Hospital's final report stated that the "liver and spleen are normal in size, shape and acoustic pattern.  The gallbladder shows no evidence of gallstone formation.  The common duct is not dilated. . . . The pancreas is partially obscured due to bowel gas. . . . There are questionable tiny calculi mid portion of the left kidney. . . . There is no hydronephrosis.[4]"  (Tr. 146.)

On July 15, 2002, Plaintiff was examined by Dr. Jaffer Khan at Greenville Hospital.  Plaintiff underwent an antrum biopsy that revealed "fragments of gastric antral type mucosa showing moderate chronic, focally active inflammation and lymphoid aggregates.  Stains for H pylori[5] organism were positive and the patient received triple therapy for H pylori."  (Tr. 150, 175.)

On June 25, 2002, Dr. Richard Pinto of Hudson MRI sent results of a CT Scan of Plaintiff's abdomen and pelvis with intravenous contrast to Dr. Takla.  The report stated that there was "[a]pparent wall thickening in small bowel loops in the mid abdomen, which may be related to under-distension with oral contrast.  If further evaluation is clinically desired a small

---

[4] Hydronephrosis: "distension of the pelvis and calyces of the kidney by urine that cannot flow past an obstruction in a ureter."  Mosby's, supra note 4, at 784.

[5] Pylorus: "a narrow, nearly tubular part of the stomach that angles to the right from the body of the stomach toward the duodenum (the shortest, widest, and most fixed portion of the small intestine)."  Mosby's, supra note 4, at 1364, 522.

bowel follow through can be obtained to evaluate this finding.  The remainder of the examination is within normal limits." (Tr. 145.)

On September 20, 2002, Plaintiff underwent a liver biopsy at Hudson MRI.  Results showed reactive changes of hepatocyte[6], mild to moderate distortion of the arcade picture, and mild to moderate intercellular cholestasis[7] versus pigmentation and minimal rare fibrosis.[8]  (Tr. 143.)  The patient was referred to a liver center at UMDNJ and a referral was recommended by the gastroenterologist.  (Tr. 143.)

Based on these doctor's visits and evaluations, Dr. Takla's final impression of Plaintiff's health on December 26, 2002 stated: "[a]bnormal liver function test most likely due to intracellular cholestasis." (Tr. 176.)

Not mentioned in Dr. Takla's December 26, 2002 report was Plaintiff's emergency room visit at Christ Hospital on September 5, 2002.  Dr. Robert Loewenstein's diagnosis, on that occasion, was "abdominal pain." (Tr. 167.)  Specifically, Dr. Loewenstein noted that "[y]our exam has not revealed the exact cause of your abdominal pain. . . . See your doctor or go to the emergency room if your pain is not better in 1-2 days." (Tr. 168.)

On February 21, 2003, Dr. Takla ordered an upper GI with small bowel follow through.  The resulting impression stated, "mild spasticity of duodenal bulb raising the question of

---

[6] Hepatocyte: "a parenchymal (pertaining to or resembling the functional tissues of an organ or gland) liver cell that performs all the functions ascribed to the liver." Mosby's, supra note 4, at 753, 1207.

[7] Cholestasis: "interruption in the flow of bile through any part of the biliary system, from liver to duodenum." Mosby's, supra note 4, at 324.

[8] Fibrosis: "a proliferation of fibrous connective tissue.  The process occurs normally in the formation of scar tissue to replace tissue lost through injury or infection." Mosby's, supra note 4, at 632.

minimal duodenitis.  Otherwise negative GI series and small bowel follow through.  No mass lesions, peptic ulcers, or constricting or obstructing lesions.  Normal terminal ileum.[9]"  (Tr. 181.)

On July 2, 2003, Dr. Takla dictated a report to the New York State Department of Temporary and Disability Assistance.  (Tr. 220.)  This report was based on a June 24, 2003 examination of Plaintiff.  The report recapped the history summarized above, and added some new details.  Dr. Takla first indicated that the Plaintiff was now being followed at UMDNG [sic] by Dr. Levvy.  (Tr. 221.)  Next, Dr. Takla discussed Plaintiff's visit to Christ Hospital's emergency room on March 4, 2003 for abdominal pains accompanied by nausea and diarrhea. (Tr. 221, 185.)  Plaintiff had a CAT scan and an MRI that revealed a normal-appearing liver. (Tr. 221.)  Plaintiff's condition also stabilized during her visit and she was released with instructions to return if her pain increased or localized to one area.  (Tr. 186.)  She was also instructed to see Dr. Takla for follow-up.  (Tr. 186)

In this dictated report, Dr. Takla also noted that Plaintiff lately had elevated Epstein-Barr virus antibody levels (Tr. 221), a bilirubin level of 2.1 (Tr. 222), and was referred to a psychiatrist for depression.  (Tr. 222.)  Dr. Takla's final words regarding Plaintiff's health, as dictated in the July 23, 2003 report, stated: "My impression about this patient is she has hyperbilirubinemia[10] and possibly intracellular cholestasis and depression/anxiety.  The patient's

---

[9] Ileum: "the distal portion of the small intestine...opening into the medial side of the large intestine."  Mosby's, supra note 4, at 813.

[10] Hyperbilirubinemia:
> [G]reater than normal amounts of the bile pigment bilirubin in the blood, often characterized by jaundice, anorexia, and malaise. Hyperbilirubinemia is most often associated with liver disease or biliary obstruction, but it also occurs when there is excessive destruction of red blood cells, as in hemolytic anemia.  Treatment is

symptoms [are] on and off abdominal pain." (Tr. 222.)

On January 5, 2004, Dr. Takla referred Plaintiff to Dr. Messihi regarding her chronic fatigue and elevated Epstein-Barr antibodies. (Tr. 204.)

2. Examination by Dr. Frank Oleg

Dr. Frank Oleg, a consulting physician at the Department of Labor's Division of Disability Determination Services, examined Plaintiff and subsequently issued a report of his examination on January 17, 2003. (Tr. 177.) Dr. Oleg reported that Plaintiff was well-developed, well-nourished, and in no acute distress. (Tr. 178.) Further, Dr. Oleg noted that Plaintiff had no difficulty getting up from a seated position, getting on and off the exam table, and she had full range of both her hands and arms in dressing and undressing. (Tr. 178.) Overall, Dr. Oleg's impression was that "[p]laintiff was a thirty-seven-year-old female with past history for significant abnormal liver function testing, elevated bilirubin, history of jaundice, fatigue, pending evaluation by liver specialist; history of stomach upset most likely symptoms suggesting irritable bowel, currently still symptomatic, no relief with medications." (Tr. 178.) Dr. Oleg noted that the Plaintiff needed further evaluation, possibly a colonoscopy. (Tr. 178.) Regarding the Plaintiff's ability to do work-related activities, Dr. Oleg found she is able to "sit, stand, walk, lift, carry, handle objects, hear, speak and travel." (Tr. 179.) However, Plaintiff "is *unable* to sit for prolonged periods of time without experiencing symptoms of abdominal pain requiring her at times to go to the bathroom with loose stools." (Tr. 179) (emphasis added).

A Quest Diagnostics laboratory report collected on January 17, 2003, the same day as Dr.

---

specific to the underlying condition. When bilirubin levels are high, treatment includes phototherapy and hydration.
Mosby's, supra note 4, at 788.

Oleg's report, shows a bilirubin level of 1.73. (Tr. 180.) The preference range is listed as 0.20 - 1.50. (Tr. 180.)

    3.  Examination by Dr. Kopel Burk

On February 13, 2003, Dr. Kopel Burk completed Plaintiff's residual functional capacity assessment. (Tr. 195-200.) Dr. Burk determined that Plaintiff had no manipulative, visual, communicative, or environmental limitations. (Tr. 196-97.) Further, Dr. Burk opined that Plaintiff's symptoms are partially proportionate to the MDI in that no actual medical cause has been defined as her medical problem. (Tr. 198.) While the liver biopsy suggests some intrahepatic cholestasis, Dr. Burk concluded that the Plaintiff's symptoms are partially consistent with the total evidence and will have little impact on the client's ability to function in an efficient and persistent manner at work. (Tr. 198.)

    4.  Comprehensive Psychiatric Evaluation

On August 6, 2003, Plaintiff was examined by Dr. Hasaj for depression. (Tr. 206.) Dr. Hasaj's comprehensive psychiatric evaluation stated that Plaintiff's three-year long depression did not improve despite taking Paxil for the previous two months. (Tr. 206.) Dr. Hasaj noted that Plaintiff was of average intellectual functioning, and of good insight and judgment. (Tr. 206.) He prescribed Plaintiff Paxil, Ambien, and Clonazepam for anxiety. (Tr. 206.)

    5.  Examination by Dr. Martin A. Fechner

Dr. Martin Fechner, an independent medical expert, testified before ALJ O'Leary at the January 8, 2004 hearing. (Tr. 20.) Dr. Fechner testified that Plaintiff's elevated bilirubin level was a sufficient reason to do a liver biopsy; the biopsy, however, only showed reactive changes and a mild to moderate distortion of the liver's architecture, not a progressive situation such as

cirrhosis, which would show distortion of the liver's architecture and fibrosis. (Tr. 51.) Dr. Fechner also stated that the Plaintiff's most recent blood test revealed liver enzyme levels that negated the existence of liver disease. (Tr. 51-52.) Further, Dr. Fechner stated that H-pylori, for which Plaintiff had tested positive, is the etiological agent of peptic ulcer disease, and Plaintiff is being treated for this. (Tr. 52.) Regarding Plaintiff's fatigue, Dr. Fechner opined that he could see no reason for it on her medical chart (Tr. 52), and that she should be able to do a full range of light activity, meaning she should have the ability to lift twenty pounds occasionally, ten pounds frequently, and spend six hours of an eight hour day walking. (Tr. 53-54.)

## DISCUSSION

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Secretary of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir.1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard, 841 F.2d at 59). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. Taybron v. Harris, 667 F.2d 411, 415 (3d Cir. 1980). Furthermore, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for

those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

Where there is substantial evidence to support the Commissioner's decision, it is of no consequence that the record contains evidence which may also support a different conclusion. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1973). Therefore, as long as substantial evidence supporting the ALJ's findings exists, this Court must affirm his decision, even if the evidence presented may also support a different conclusion. LaCorte v. Bowen, 678 F. Supp. 80, 84 (D.N.J. 1988).

### B. Statutory Standards

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 4239(d)(5). To qualify for SSI benefits, a claimant must first establish that she is needy and aged, blind, or "disabled." 42 U.S.C. § 1381. A claimant is "disabled" under the Act if he or she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); see also Nance v. Barnhart, 194 F. Supp. 2d 302, 318 (D. Del. 2002).

Finally, while subjective complaints of pain are considered, they are not enough to

11

establish disability. 42 U.S.C. § 423(d)(5)(A). An impairment only qualifies as disabling if it "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). While the Third Circuit has stated that an ALJ may not ignore a claimant's subjective complaints of pain when evaluating a disability claim, and that objective evidence of pain itself is not required, it requires objective medical evidence of a condition which could produce pain. Dorf v. Bowen, 794 F.2d 896 (3d Cir. 1986); Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984). Specifically, the Third Circuit holds: (1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence; (2) that subjective pain may support a claim for disability benefits and may be disabling; (3) that when such complaints are supported by medical evidence, they should be given great weight; (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence. Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985).

**C. The Five Step Evaluation Process and the Burden of Proof**

Determinations of disability are made by the Commissioner, pursuant to the five-step process, outlined in 20 C.F.R. § 404.1520. If the Commissioner determines a claimant to be either disabled or not disabled at any step of the review process, he will not review the claim any further. 20 C.F.R. § 404.1520(a)(4); Sullivan v. Zebley, 493 U.S. 521, 525-26 (1990).

At the first step of the review, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If a claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be

denied. Id.; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

At step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered. Id. If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment with the impairments presumed severe enough to preclude any gainful work, listed in Appendix I, Subpart P, Regulation No. 4; 20 C.F.R. § 404.1520(d). If the claimant's impairment meets or equals one of the listed impairments, she will be found disabled under the Social Security Act. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(e); Adorno v. Shalala, 40 F.3d 43, 46-48 (3d Cir. 1994). If the claimant is unable to resume her past work, and her condition is deemed "severe" yet not listed, the evaluation moves to the final step. At step five, the burden of production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. § 404.1560(c)(1). If the ALJ finds a significant number of jobs that claimant can perform, plaintiff will be found not disabled. 20 C.F.R. § 404.1560(c)(2).

### D. ALJ O'Leary's Findings

ALJ O'Leary performed the five-step evaluation and concluded that the Plaintiff is not disabled, as defined in 20 C.F.R. § 404.1520. (Tr. 17-23.) The ALJ determined that the Plaintiff satisfied the first step because there was no indication that she had engaged in substantial gainful activity since her alleged onset date of disability. (Tr. 17.) At step two, the ALJ determined that the Plaintiff's liver disease and depression constituted a "severe" impairment, within the meaning of the regulations. (Tr. 17.) At step three, however, the ALJ determined that Plaintiff's impairment was not severe enough to meet or medically equal, either singly or in combination, any of the impairments listed in Appendix I, Subpart P, Regulation No. 4. (Tr. 17.)

In evaluating Plaintiff's claim under the fourth step of the inquiry, ALJ O'Leary determined that the objective findings in the case failed to provide support for the claimant's allegations of disabling symptoms and limitations. (Tr. 18-22.) Therefore, the ALJ concluded that Plaintiff had the residual functional capacity for light work, and that she was capable of returning to her past relevant work as a receptionist. (Tr. 22.)

### E. Analysis

Plaintiff contends that ALJ O'Leary's determination should be reversed or, in the alternative, remanded for reconsideration because the decision of the Commissioner is unsupported by substantial evidence in the record.

First, Plaintiff argues that the ALJ's decision is not based on substantial evidence of record. Plaintiff cites several cases supporting the proposition that the Commissioner must evaluate all relevant evidence and provide an explanation when he either opts to reject relevant

14

evidence or when there is conflicting probative evidence in the record. For example, Plaintiff cites Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001), where the court stated that it is unable to conduct its substantial evidence review if the ALJ fails to identify the evidence he or she rejects and the reason for its rejection. Also cited is Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978), where the court reversed and remanded the decision of an ALJ who failed to address significant items of evidence which were in direct conflict with his findings.

Here, ALJ O'Leary sufficiently addressed all the relevant supporting and contradictory medical evidence in Plaintiff's case. Pages three through six of the ALJ's ruling list all of Plaintiff's medical visits and the corresponding findings from these visits. (Tr. 18-21.) The medical findings Plaintiff quotes in her brief as providing "absolute objective evidence of chronic, moderate to severe liver disease" (Pl.'s. Br. at 8) are directly cited and addressed in the ALJ's ruling. (Tr. 18-19.) Furthermore, in rejecting Dr. Frank's opinion, ALJ O'Leary stated that he gave it less weight than Dr. Takla's because it was based on a single observation of the Plaintiff. (Tr. 22.) According to 20 C.F.R. §§ 404.1527(d)(1) and (2), more weight is given to the opinion of a source who examines and treats a patient than to reports of individual examinations or objective medical findings alone. The ALJ considered all of the medical evidence in the record in arriving at his decision and therefore the ALJ's decision is supported by substantial evidence.

Second, Plaintiff asserts that the ALJ articulated no evidentiary reason for his residual functional capacity determination. Plaintiff argues that the Third Circuit requires an ALJ to consider all evidence before him and must issue findings and conclusions that are both "comprehensive and analytic." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981); Burnett v.

Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). Specifically, Plaintiff asserts that the ALJ's entire justification for his RFC determination is contained within one paragraph. (Pl.'s. Br. at 15.)

In Burnett, the Third Circuit held that, in determining whether a claimant's residual functional capacity enables her to perform past relevant work, the ALJ "must make specific findings of fact as to the claimant's residual functional capacity." Burnett, 220 F.3d at 120. Even though "the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." Id.

Here, the ALJ's decision, read as a whole, illustrates that he appropriately considered the evidence in reaching a conclusion on Plaintiff's RFC. ALJ O'Leary began his assessment of claimant's RFC on page three of his decision, where he stated the types of evidence to consider in making such a determination. (Tr. 18.) The ALJ then turned to the medical evidence and objective findings, specifically referencing "mild to moderate intracellular cholestasis" and "elevated bilirubin levels," but also pointing to the failure of Plaintiff's physician to determine that she is disabled or unable to work, and the most recent medical findings in the record showing that the claimant's liver enzymes were normal and her liver biopsy only showed mild inflammation. (Tr. 19, 21-22.) The paragraph cited in Plaintiff's brief as the ALJ's entire determination is actually the conclusion following the description and discussion of the medical evidence. (Pl.'s Br. at 15; Tr. 22).

Furthermore, in her brief, Plaintiff does not point to any evidence overlooked or ignored by the ALJ, but rather argues that ALJ O'Leary did not explain how the evidence convinced him of Plaintiff's RFC determination. (Pl.'s Br. at 16.) In Jones v. Barnhart, 364 F.3d 501, 505 (3d

Cir. 2004), the Third Circuit explained, "<u>Burnett</u> does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of <u>Burnett</u> is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." ALJ O'Leary's discussion of all the relevant medical evidence, followed by a conclusion, satisfies the <u>Burnett</u> requirement that an ALJ develop the record and explain his findings regarding a Plaintiff's RFC.

Lastly, Plaintiff asserts that the ALJ offered no explanation for his finding that Plaintiff's major depressive disorder would not affect her. Specifically, Plaintiff asserts that the ALJ's entire evaluation on this point is contained within one paragraph. (Pl.'s. Br. at 20.)

In his decision, ALJ O'Leary addressed all the applicable psychiatric evidence in the case, which consisted of Dr. Hasaj's evaluation of Plaintiff. (Tr. 19-21.) In concluding that Plaintiff's mental impairment would not impose more than a slight abnormality or have more than a minimal impact on her ability to perform work-related activities, ALJ O'Leary acknowledged Dr. Hasaj's assessment of major depressive disorder, single episode (Tr. 20), but also pointed to Dr. Hasaj's findings that the Plaintiff's thought processes were logical and goal directed, her intellectual functioning was adequate, and her insight and judgment were adequate. (Tr. 19-20.)

Furthermore, Plaintiff's brief does not point to a particular piece of evidence overlooked or ignored by the ALJ. The ALJ's discussion of the relevant psychiatric evidence, followed by a conclusion, satisfies the <u>Burnett</u> requirement that an ALJ set forth the reasons for reaching a determination of the plaintiff's RFC.

## **CONCLUSION**

For the reasons stated above, this Court finds that the Commissioner's determination is supported by substantial evidence.   The decision of the Commissioner is AFFIRMED.


Dated: March 30, 2006

                                S/Joseph A. Greenaway, Jr.
                               JOSEPH A. GREENAWAY, JR., U.S.D.J.